Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)

Plaintiff pro se

**FILED**

Apr 17 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___s/STN___ DEPUTY

# UNITED STATES FEDERAL DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

Anton A. Ewing,

                    Plaintiff,

vs.

DME CAPITAL, LLC,

                    Defendant

Case No.: **'24CV0692 AGS JLB**

**COMPLAINT**
**1. 47 U.S.C. §227 (TCPA)**
**2. PC §637.2 / 632.7 (CIPA)**
**3. CIVIL CODE §1770(A)(22)(A)**

Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") brings this civil

Complaint for money damages and injunctive relief, demanding a trial by jury,

against Defendant DME CAPITAL, LLC (doing business as "Tip Top")[1] to stop

said defendant from violating the Telephone Consumer Protection Act and the

---

[1] Plaintiff hereby puts Mitchell Ekdeshman on notice that he is going to be named as a defendant as soon as
discovery establishes a goodfaith belief that he is vicariously liable. Please review the Uniform Fraudulent Transfer
Act.
COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)  3. CIVIL CODE §1770(A)(22)(A) -
1

24CV

Telemarketing Sales Rule by sending telemarketing text messages and calling with prerecorded artificial voice messages to Plaintiff's personal residential cellular phone (ending in -9640), which is registered on www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff. Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, including investigation conducted by Plaintiff[2]. Plaintiff is suing to stop Defendant's practice of sending text messages and callings using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county without their prior express consent by obtaining an injunction prohibiting violation of the TCPA; (2) stop Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by Defendant's conduct.

**PARTIES**

---

[2] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
2

24CV

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[3].

2. Plaintiff has been repeatedly called and texted by DME CAPITAL, LLC, directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov as well as Plaintiff's express demands directly to Defendant to stop all future calls and texts.

3. Defendant DME CAPITAL, LLC is a New Jersey limited liability company at 208 West State Street, Trenton, New Jersey 08608, that conducts business throughout this District, in San Diego, California. Defendant DME CAPITAL, LLC is a "person" as defined by 47 USC §153(39). Defendant is in the business of selling merchant cash advance services through its employees and executive officers. Defendant uses the wires of the United States to harass and annoy DNC registered telephone owners with their

---

[3] For clarity, this number is not a hardwired landline. This number is cellular phone. No cause of action under PC §632 is alleged. Arguing that cellular calls require "confidential communications" is frivolous.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 3

24CV

solicitation calls to sell sham debit and merchant cash advance services to unsuspecting victims in California.

4. Defendant DME CAPITAL, LLC is also located in New York, NY. Plaintiff is only suing DME CAPITAL, LLC and no other persons or parties, named or unnamed, whether as Does or otherwise. Defendant's attorneys should not be confused here. Plaintiff repeats himself again, there is only **ONE (1)** defendant named in this civil lawsuit and Plaintiff is specifically alleging that Defendant directly engage in the illegal and offending conduct.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

6. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)  3. CIVIL CODE §1770(A)(22)(A) - 4

24CV

7. The Honorable District Judge William Q. Hayes, on 9/22/2022, in *Ewing vs. CSolar*, 22cv00720-WQH, at ECF No. 8, entered an order granting Plaintiff's motion for default judgment, imposing $11,000 against CSolar. Importantly, the Complaint in that case is **substantially similar** to this Complaint, the only real differences being the names of the defendants, the dates, times and telephone numbers called from and the fact that CSolar was selling solar panels while Defendant DME CAPITAL, LLC is selling loan and cash advance services. Since this Court was able to find that all the elements of the TCPA causes of action were well-plead, that renders any motion to dismiss this Complaint frivolous, harassing and solely for the purpose of delay, a violation of 28 USC §1927. Plaintiff's Complaint was able to be read, understood and ruled upon in Plaintiff's favor in the CSolar case by the Honorable Judge Houston. Defendant cannot credibly argue that the Complaint in *Ewing vs. DME CAPITAL, LLC* is so bad that it must be dismissed when in fact Judge Houston was able to figure it out rather cogently. Judge Houston's analysis should be read by Defendant's attorneys to assist them.

8. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)  3. CIVIL CODE §1770(A)(22)(A) - 5

facts.  Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording, Civil Code §1770(a)(22)(A)- illegal prerecorded voice message to a cell phone without consent and without a prior live operator introduction.

9.  Defendant DME CAPITAL, LLC has purposefully directed its activities into California and has knowingly, intentionally and willfully recorded its conversations with Plaintiff without disclosing the fact of recording at the beginning of the calls.  Area code 619 is entirely within San Diego County.

## INTRODUCTION

10. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).  Plaintiff is also doing his job to help stop harassing and annoying telemarketers throughout the country by filing these lawsuits.

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). Plaintiff has done registered his phone.

12. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

14. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

15. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

16. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

17. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million

calls per day. www.robocallindex.com. Plaintiff still receives nearly a dozen harassing and annoying robocalls each and every day from unscrupulous businesses trying to sell auto repairs, life insurance, solar panels, credit repair, student loan assistance, and merchant cash advances to name just a few. This must stop.

18. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data. It is unfortunate that making a complaint to the FCC actually results in nothing being done. The FCC simply does not have the resources to go after telemarketers.

19. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[4]

20. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the*

---

[4] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
8

*Telephone Consumer Protection Act of 1991*, Notice of Proposed

Rulemaking, CG Docket No. 02-278, at 2 (2016).[5]

21. This merchant cash advance telemarketing trend has resulted in consumers,

including this Plaintiff, being bombarded by unsolicited solicitation calls

without their (or his) consent and in violation of the TCPA, in violation of

CIPA, and Civil §1770.

22. The initial part of the call was a prerecorded voice, then some time past, and

then Defendant's employee "Mitchell Ekdeshman" admitted to Plaintiff, at

the end of the 1/11/2024 telemarketing call, when asked by Plaintiff, that

Defendant does in fact record all of its solicitation calls. Mitchell

Ekdeshman transferred the call to another male person who attempted to

justify the illegal act of recording by adding that they record for "training

and quality control purposes" but that additional fact is not an excuse for

violating CIPA. Any and all calls into California must disclose, at the

beginning of the call, that said call is being recorded. Waiting until the very

end of the call to admit, when asked, that it was recorded is too late.

Liability for recording attaches when there is a call, to a cellular phone,

---

[5] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
9

24CV

where there is a reasonable expectation of privacy and disclosure of the fact

of recording does not occur at or near the beginning of said call. Cellular

phones do not require confidential private information to be exchanged to be

protected by CIPA.

23. In an action under the TCPA, a plaintiff must only show that the defendant

"called a number assigned to a cellular telephone service using an automatic

dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*,

857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir.

2014).

24. The FCC also recognized that wireless customers are charged for incoming

calls whether they pay in advance or after the minutes are used. Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991,

CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

25. The TCPA regulations promulgated by the FCC define "telemarketing" as

"the initiation of a telephone call or message for the purpose of encouraging

the purchase or rental of, or investment in, property, goods, or services." 47

C.F.R. §64.1200(f)(12). In determining whether a communication

constitutes telemarketing, a court must evaluate the ultimate purpose of the

communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

26. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

27. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

28. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

29. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

30. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

31. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

## COMMON ALLEGATIONS

32. Defendant DME CAPITAL, LLC is a loan and merchant cash firm run by Mitchell Ekdeshman, selling its services throughout San Diego County.

33. Defendant DME CAPITAL, LLC which conducts business using the assumed name "DME Capital" owns and operates the website, www.dmecapital.net.

34. Defendant DME CAPITAL, LLC conducts telemarketing campaigns to sell its services to consumers throughout southern California.  As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by Defendant DME CAPITAL, LLC.   Plaintiff can assert and allege this detailed fact because Defendant's employee, Mitchell Ekdeshman, expressly admitted it.

35. In placing unsolicited text messages to consumers, Defendant DME CAPITAL, LLC sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

36. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant DME CAPITAL, LLC to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($405 filing fee plus service

of process fees).  The text messages were generic in nature and did not address Plaintiff by name.  The text message did not offer a way to opt out or to stop future solicitation texts.

37. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by a rather long pause before the artificial-voice prerecorded message began to play on the call.  Plaintiff was required to hit "1" to be transferred to a live operator.  This happened on each and every call that is the subject of this lawsuit.  Many courts have held that this very same bubble popping and long pause are highly indicative of an ATDS being used.  However, the Defendant fails to comprehend that it is also violation of section 227(b)(1)(A) to use, and Defendant did in fact use, an artificial pre-recorded voice message to obtain a subsequent transfer to a live operator employee of Defendant.  Additionally, the text messages were sent via a "short code" and not a full ten-digit telephone number.  This further indicates that an ATDS must have been used to blast out the spam text messages.

38. Plaintiff and Defendant do not have a pre-existing business relationship.  Plaintiff has never been a customer or client of Defendant's business.  Moreover, Plaintiff does not even have any debt and thus could not possibly have a need for Defendant's debt and cash advance services.

COMPLAINT  1. 47 U.S.C. §227 (TCPA)  2. PC §637.2 / 632.7 (CIPA)  3. CIVIL CODE §1770(A)(22)(A) - 14

24CV

39. Specifically, the hardware and software used by Defendant DME CAPITAL, LLC has the capacity to store and/or produce numbers using a random or sequential number generator, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer in that it is capable of sending numerous text messages and calls simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by Defendant for the calls and the use of the short code is highly indicative of an ATDS.

40. The text messages were sent by Defendant with its knowledge and approval of the CEO of Defendant. Defendant DME CAPITAL, LLC knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its employees using Defendant's computers and software. The text messages were generic which indicates an ATDS was used by Defendant.

41. All of the text messages were sent via an ATDS at the direction and oversight of Defendant DME CAPITAL, LLC Said Defendant knew about,

directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

42.  Based on Plaintiff's vast knowledge and experience with these types of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list or a self-generated list within the device itself for texting at a later date.[6]  Plaintiff alleges that this is exactly what Defendant DME CAPITAL, LLC has done.

43. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, employing a short code, has the capacity to generate random or sequential telephone numbers.  One of Defendant's employees, Mitchell Ekdeshman, expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy their loan programs.  Defendant earns and gets paid a commission for each loan they sell.

_____

[6] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 16

24CV

44. By sending unsolicited text messages as alleged herein, Defendant DME CAPITAL, LLC has caused Plaintiff actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life, loss of value realized for monies he paid to his AT&T carrier for the receipt of such messages, and the diminished use, enjoyment, value, and utility of his telephone plan. Furthermore, Defendant DME CAPITAL, LLC sent the messages knowing they trespassed against and interfered with Plaintiff's use and enjoyment of, and the ability to access, his phone, including the related data, software, and hardware components.

45. FCC regulations promulgated under the TCPA specifically prohibit Defendant from using an artificial or prerecorded voice to call Plaintiff's Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[7]

**PLAINTIFF EWING'S ALLEGATIONS DIRECTLY AGAINST**

**DEFENDANT DME CAPITAL, LLC.**

---

[7] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions.*

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) -
17

24CV

46. Defendant DME CAPITAL, LLC called or texted Plaintiff Ewing, on his DNC registered personal cell phone, 619-719-9640, on the following dates:

    a. August 12, 2022 from 646-203-1602 at 11:29 AM -- Call

    b. August 13, 2022 from 646-203-1602 at 8:17 AM – Call

    c. November 1, 2023 from 732-743-7373 at 9:32 AM—Call

    d. November 13, 2023 from 732-743-7373 at 10:26 AM—Call

    e. November 14, 2023 from 732-743-7373 at 2:38 PM—Call

    f. November 16, 2023 from 732-743-7373 at 11:20 AM—Call

    g. November 18, 2023 from 732-743-7373 at 1:31 PM—Call

    h. November 19, 2023 from 732-743-7373 at 10:27 AM—Call

    i. November 29, 2023 from 732-743-7373 at 2:49 PM—Call

    j. April 10, 2024 from 323-922-2551 at 2:13 PM—Call

    k. April 17, 2024 from 848-224-1485 at 9:34 AM—Call

    l. January 19, 2024 from 87878 at 10:16 AM—Text

    m. January 20, 2024 from 87878 at 6:17 AM—Text

47. The above dates, times, from what number and to what number is all the detail that is required under the TCPA. Nothing else is necessary at the initial pleading stage. *See* Rule 8 and Rule 10, FRCP. The Court is also respectfully requested to see each footnote and the cases that Plaintiff has

cited from.  While this Complaint was written by a pro per litigant, it was effectively lifted from TCPA complaints drafted by TCPA plaintiff lawyers.

48. There were, thus far, 11 calls (($1,500 + $1,500 +$5,000) *11 = $88,000)) and 2 text messages ($1500 + $1500  times 2 = $6,000) from Defendant DME CAPITAL, LLC.

49. Defendant's employee Mitchell Ekdeshman admitted to Plaintiff that he did not dial Plaintiff's phone number by finger, but rather using a computer software that stores and automatically dials the phone numbers without any input from him.  "Mitchell Ekdeshman" stated that once a person hit's "1" then the software connects or transfers the call to either him or another telemarketer in the office.

50. Replying "STOP" did not work.  Plaintiff received additional subsequent text messages from Defendant DME CAPITAL, LLC.  Importantly, Plaintiff became enraged on each telephone call making very clear that the caller must never telemarket him ever again.  And yet, Defendant DME CAPITAL, LLC keeps calling and texting to solicit Plaintiff after being told to stop.

51. Spoofing the prefix of 719, or any other local prefix spoof, is a standard ATDS robo-dialing technique or practice that all telemarketers use to

attempt to increase the likelihood that a called person will answer the call. Fortunately, since the STIR/Shaken[8] laws were made effective, this scam is now significantly attenuated but it is not stopping by any stretch of the imagination.

52. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3rd part or agent) stated: "*Could you use a cash advance to help grow your business? Press one to be connected to one of our managers*" or similar words to that affect. The TCPA and CLRA do not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

53. Defendant DME CAPITAL, LLC was calling to sell its loan brokering services to Plaintiff who was in California at the time.

54. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages. Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued. Moreover, Plaintiff has expressly informed over one hundred

---

[8] https://www.fcc.gov/call-authentication

TCPA defense attorneys, in writing, across the nation to inform their clients to not call Ewing for solicitation.   At the bottom of each email Plaintiff also has the following warning which he has sent to thousands of persons:

    a. "This email does not authorize you to call me for SOLICITATION.  This email is not consent to TELEMARKET my phone number.  Any calls without express authorized consent shall be treated as a violation of 47 USC §227."

55. Plaintiff Ewing's phone number is not associated with a business and is used for personal, private residential use only.  Notwithstanding, mixed use phones are still fully protected.

56. The text messages that Plaintiff received are solicitations encouraging the purchase of Defendant's services.

57. The text messages were sent by Defendant DME CAPITAL, LLC.  The text messages were sent at Defendant DME CAPITAL, LLC's direction, command and control, that is, Defendant ordered each of its employees to respond to the calls that it made after it sent out the automatic solicitations.

58. Defendant DME CAPITAL, LLC expressly and overtly controlled the exact generic content of the text messages.

59. The text messages, unlike the emails, did not address Plaintiff by name. Thus they were sent by, with and through an automatic telephone dialing system or robo-dialer.

60. Said dialing system has the capacity to store and randomly generate phone numbers and to dial those numbers without human intervention.

61. Plaintiff Ewing never provided his phone number or his consent to Defendant DME CAPITAL, LLC to receive any solicitation from them or on their behalf. Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant DME CAPITAL, LLC.

62. The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

63. Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that

violates the TSR. *United States v. Dish Network LLC*, No. 09-3073, 2017

U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

64. The phone calls placed to Plaintiff's cellular telephone were placed via an

"automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C.

§227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A). At one or more

instance during these calls, Defendant DME CAPITAL, LLC utilized an

"artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

65. Defendant's calls constituted calls that were not for emergency purposes as

defined by 47 U.S.C. § 227(b)(1)(A).

66. Defendant's calls were placed to telephone number assigned to a cellular

telephone service for which Plaintiff incurs a charge for incoming calls

pursuant to 47 U.S.C. § 227(b)(1).

67. Plaintiff is not a customer of Defendant's services and has never provided

any personal information, including his cellular telephone number, to

Defendant DME CAPITAL, LLC for any purpose whatsoever. In addition,

Plaintiff told Defendant DME CAPITAL, LLC at least once to stop

contacting him and Plaintiff has been registered on the Do-Not-Call Registry

for at least thirty (30) days prior to Defendant DME CAPITAL, LLC

contacting him. Accordingly, Defendant DME CAPITAL, LLC never

received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[9]

68. Plaintiff did not have a personal relationship with Defendant DME CAPITAL, LLC at any point in time.[10]

69. Defendant DME CAPITAL, LLC did not make the telephone solicitations in error.

70. When Plaintiff answered calls from Defendant DME CAPITAL, LLC, he heard a prerecorded message and had to wait on the line to be transferred to a live representative after pressing "1."

71. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

72. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act

---

[9] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[10] 21-cv-01123

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 24

of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

73. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the litigation, but it is more properly applied at the Rule 56 MSJ stage.

74. Plaintiff has never done business with Defendant or any of its employees.

75. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice. That means the test of whether an ATDS was used is not relevant at this time.

76. The Complaint alleges 11 of the 13 telephone calls violated of CLRA – Cal. Civ. Code §1770(a)(22)(A), but not the text messages sent without consent. Since Plaintiff demanded that Defendant stop calling at the end of the first call, then Plaintiff asserts a CLRA violation on 11 of the calls alleged herein.

77. Billions of illegal and harassing telemarketing calls are made to Americans each month. But for people like Plaintiff, it would be tens of billions of illegal and harassing telemarketing calls. Parasitic criminal organizations like Defendant need to be put out of business in order to stop this infection

called telemarketing. Most Americans receive more spam texts and more telemarketing calls than they do communications from friends and family.

78. Defendant DME CAPITAL, LLC, through its employee Mitchell Ekdeshman and others, called Plaintiff to sell its loan products. The calls were not placed by an unknown third party. Defendant physically initiated the calls and physically sent the text message with their auto dialing software and equipment.

79. Since Plaintiff registered his personal private cellular phone, 619-719-9640, on www.donotcall.gov more than 31 days prior to the first call and the first text from Defendant, then Defendant's failure to scrub their calling lists against the DNC is a violation of 27 USC §227(c).

80. Defendant's illegal calls and illegal texts were and are the cause of Plaintiff damages, including statutory damages, which have been held to be sufficient damage and sufficient injury to pass Article III standing.

81. Defendant called Plaintiff's cellular telephone number, using an automatic telephone dialing system with a prerecorded artificial voice message introduction, without Plaintiff's prior express written consent, by robo-dialing Plaintiff's DNC registered phone number, devoid of any pre-existing or established business relationship. Further, Defendant continued to

seriously and substantially harass and annoy Plaintiff after Defendant was expressly and explicitly told to cease and desist. Defendant would not know concrete injury even if it were hit by a ton of concrete bricks.

82. Since Defendant has failed to provide a copy of its DNC policies and training procedures, within 30 days, then Defendant has violated the FCC and FTC regulations that are incorporated into 27 USC §227.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant DME CAPITAL, LLC)**

83. Plaintiff Ewing repeats and realleges paragraphs 1 through 82 of this Complaint and incorporates them by reference.

84. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

85. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the

regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

86. Defendant DME CAPITAL, LLC violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

87. Defendant DME CAPITAL, LLC violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone text message in a 12-month period made by or on behalf of Defendant DME CAPITAL, LLC in violation of 47 C.F.R. § 64.1200, as described above.

88. Defendant DME CAPITAL, LLC failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

89. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,* to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

90. Defendant DME CAPITAL, LLC used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

91. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant DME CAPITAL, LLC violated 47 U.S.C. § 227(b)(1)(A)(iii).

92. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

93. Defendant DME CAPITAL, LLC. violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

94. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*.'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

95. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called

party with the name of the individual caller, the name of the

person or entity on whose behalf the call is being made, and a

telephone number or address at which the person or entity may be

contacted. The telephone number provided may not be a 900

number or any other number for which charges exceed local or

long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request

by the subscriber to the contrary, a residential subscriber's do-not-

call request shall apply to the particular business entity making the

call (or on whose behalf a call is made), and will not apply to

affiliated entities unless the consumer reasonably would expect

them to be included given the identification of the caller and the

product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls

for telemarketing purposes must maintain a record of a consumer's

not to receive further telemarketing calls. A do-not-call request

must be honored for 5 years from the time the request is made.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 32

24CV

96. Here, Defendant DME CAPITAL, LLC sent Plaintiff Ewing multiple

unsolicited text messages after he had submitted valid "STOP" and "BYE"

requests.

97. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §

227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages,

for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47

U.S.C. § 227(b)(3)(C).

**SECOND CLAIM FOR RELIEF**
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**
**(Against Defendant DME CAPITAL, LLC)**

98. Plaintiff Ewing repeats and realleges paragraphs 1 through 82 of this

Complaint and incorporates them by reference.

99. The foregoing acts and omissions of Defendant DME CAPITAL, LLC

constitute numerous and multiple knowing and/or willful violations of

California's Invasion of Privacy Act. There is no claim for any PC §632

land-line violation in the lawsuit.

100.     As a result of Defendant's knowing and/or willful violations of PC

§632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per

call that was illegally recorded without Plaintiff's knowledge or consent.

101.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### THIRD CLAIM FOR RELIEF
**Consumer Legal Remedies Act**
**(Violation of CA Civil Code §1770(a)(22)(A))**
**(Against Defendant DME CAPITAL, LLC)**

102.     Plaintiff Ewing repeats and realleges paragraphs 1 through 82 of this Complaint and incorporates them by reference.

103.     Defendant DME CAPITAL, LLC used and employed an artificial voice, prerecorded message, without consent or permission in advance, to initiate each call to Plaintiff. Defendant was not selling loans or mortgages.

104.     Plaintiff suffered harm by Defendant's violation of California Civil Code §1770(a)(22)(A), inter alia, through the loss of use of his phone during each call as well as annoyance and harassment caused, proximately and actually, by Defendant DME CAPITAL, LLC. Damages of $2500 per call for 11 of the 13 calls are hereby requested based on the harassment and civil stalking engaged in by Defendant.

105.     Defendant's acts of unfair competition include, but are not limited to, the following: (1) directly violated the TCPA at 47 USC §227(c) and its regulations at 47 C.F.R. §64.1200(c)(2), by engaging in a pattern or practice

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 34

24CV

of initiating telephone solicitations to Plaintiff's residential telephone, whose

telephone number was listed on the National Do Not Call Registry, and (2)

directly violated 47 C.F.R. §64.1200(a)(2) and 47 USC §227(b)(1)(B), by

engaging in a pattern or practice of initiating telephone solicitations to

Plaintiff's residential telephone line, using artificial or prerecorded voices to

deliver a message without the prior express consent of the called party and

where the call was not initiated for emergency purposes or exempted by rule

or order of the Federal Communications Commission under 47 USC

§227(b)(2)(B).

106.    Defendant has directly violated California Business & Professions

Code section 17592(c)(1) by making or causing to be made telephone calls

to Plaintiff's California telephone number listed on the National Do Not Call

Registry and seeking to rent, sell, promote, or lease goods or services

(namely usury interest rate loans without a CFL license) during those calls.

107.    Plaintiff is entitled to, and hereby seeks, both punitive and exemplary

damages to send a clear message to Defendant and others like Defendant to

cease and desist from violation of the law.

108.    Plaintiff is also entitled to and seeks injunctive relief prohibiting

such conduct in the future.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1) and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B) plus treble damages ($1,500 per call and per text), a total of $3,000 per call under the TCPA;

e) An injunction requiring Defendant to cease all unsolicited calling activity that violates the TSR, the FTC Act and the TCPA, and to otherwise protect the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) $2,500 for each of the 11 calls that contained a pre-recorded artificial voice message at the beginning of each call.

h) for exemplary and punitive damages against Defendant in an amount to

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 36

24CV

be determined with exactness at trial herein; and

i) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ewing requests a jury trial.

Dated this 17th day of April, 2024.

/s/ Anton Ewing

Anton A. Ewing, Plaintiff

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 37

24CV